JACKSONWHITE
ATTORNEYS AT LAW
*A Professional Corporation*

40 North Center Street, Suite 200
Mesa, Arizona   85201
Telephone No.:   (480) 464-1111
Facsimile No.:   (480) 464-5692
Email:   centraldocket@jacksonwhitelaw.com
*Attorneys for Plaintiff*
By:   Michael R. Pruitt, SBN 011792
        mpruitt@jacksonwhitelaw.com
        Nathaniel J. Hill, No. 028151
        nhill@jacksonwhitelaw.com
        Grant S. Cragun, No. 034332
        gcragun@jacksonwhitelaw.com

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| James Marshall,<br><br>   Plaintiff,<br><br>v.<br><br>HonorHealth, an Arizona corporation,<br><br>   Defendant. | Case No. _____<br><br>**COMPLAINT**<br><br>(Violation of Title VII, Violation of ADEA, and Violation of ADA)<br><br>(*Jury Trial Requested*) |

Plaintiff, James Marshall, by and through his counsel undersigned, and for his Complaint, alleges as follows:

**PARTIES AND JURISDICTION**

1.   This action arises under various federal statutes including Title VII of the Civil Rights Act of 1964 (Title VII), the Age Discrimination in Employment Act (ADEA), and the Americans with Disabilities Act (ADA), as amended.

2.   James Marshall is a former employee of HonorHealth, who during the relevant time-period, resided in Maricopa County, Arizona.

3.   HonorHealth is an Arizona non-profit corporation with its headquarters located in Scottsdale, Arizona.

4. HonorHealth conducts significant business and healthcare related operations primarily in the Phoenix, Arizona metropolitan area of Maricopa County.

5. The events giving rise to this lawsuit occurred within Maricopa County, Arizona.

6. As this matter arises under federal statute, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331.

7. Venue is proper for this Court.

## BACKGROUND FACTS

8. HonorHealth was formed in 2013 through the merger of Scottsdale Healthcare Corporation and John C. Lincoln Hospital.

9. HonorHealth operates five community hospitals and medical centers within Maricopa County, Arizona that provide inpatient, outpatient and emergency care.

10. HonorHealth also operates numerous primary and specialty healthcare facilities in Maricopa County, Arizona.

11. On information and belief, HonorHealth employs more than 3,000 physicians and over 12,000 healthcare staff and employees.

12. Mr. Marshall was hired by Scottsdale Healthcare Corporation, the corporate predecessor of HonorHealth, as Director of Employee Relations on July 13, 2009.

13. During most or all of the relevant time period, Mr. Marshall was over the age of 40 and covered by the employment protections of the ADEA.

14. Over the next six years, Mr. Marshall received several promotions and became Vice President of Human Resources for HonorHealth in January 2015. As part of this promotion, Mr. Marshall received a compensation and benefit package. The offer presented Mr. Marshall included a written guarantee of receiving one year of compensation in the event of his involuntary termination. The written guarantee did not include any offset or other condition that would reduce this payout.

15. As a senior member of HonorHealth HR, Mr. Marshall worked with HonorHealth, its policies and procedures, and employees and staff to comply with state

and federal discrimination and equal opportunity laws. Mr. Marshall had responsibility to ensure HR staff were properly trained and company policies and procedures were compliant and updated as needed. He was also responsible for processing and reviewing the terms and conditions of the severance and severance compensation packages given to HonorHealth executives and upper management.

16. As a senior member of HonorHealth HR, Mr. Marshall engaged in handling, investigating and resolving allegations and complaints of illegal acts of age, sex and disability discrimination and hostile work environments made against HonorHealth, employees and senior staff.

17. Mr. Marshall also participated in responding to EEOC charges of discrimination on behalf of HonorHealth and represented his employer at multiple EEOC mediations.

18. In connection with these activities, Mr. Marshall also engaged in protected activities with HonorHealth when he disclosed and pointed out deficiencies in HonorHealth EEO policies, practices and procedures that he reasonably believed violated the law. Mr. Marshall subsequently suffered retaliation, adverse employment actions and termination for engaging in protected activities in violation of Title VII, the ADEA and the ADA.

19. While reviewing the online disability policy for HonorHealth following an EEOC mediation on or about July 14, 2015, Mr. Marshall discovered what he reasonably believed was a serious HonorHealth ADA compliance violation involving medical disability leave. Concerned about this discovery and potential liability and violation of the law, Mr. Marshall engaged in protected activity by internally reporting that HonorHealth's then current disability policy included a violation of the ADA. The task of updating the disability policy and bringing it into full compliance with the ADA, as amended, had been previously assigned to Sarah Orozco.

20. Ms. Orozco was a female and, on information and belief, in her early thirties at that time. Ms. Orozco had a history of credibility and performance issues and had recently received a low performance rating from Mr. Marshall.

21. Mr. Marshall called a benefits staff meeting for July 15, 2015 and engaged in further protected activities by reviewing the detailed legal requirement of the ADA, as amended, how the then current policy was deficient, how HR staff should handle disability issues and requests for reasonable accommodations by HonorHealth employees, and medical disability leave. Mr. Marshall conducted the meeting in an appropriate and reasonable manner. Ms. Orozco used the meeting as a pretext to complain about Mr. Marshall not long after Mr. Marshall had given her the low performance rating.

22. On or about July 17, 2015, HonorHealth opened a pretextual, unwarranted and retaliatory investigation of Mr. Marshall ostensibly because of the events during the July 15, 2015 staff meeting.

23. The preferential consideration given to the objectively false allegations of a disgruntled female employee, in contrast to the objectively reasonable information Mr. Marshall provided, constitute disparate gender discrimination and retaliation in violation of Title VII.

24. The preferential consideration given to the objectively false allegations of Ms. Orozco, who was significantly younger than Mr. Marshall, in contrast to the objectively reasonable information Mr. Marshall provided, constitute age discrimination in violation of the ADEA.

25. The investigation cited false allegations that Mr. Marshall berated HR staff using foul language. While Mr. Marshall categorically denies these allegations, he has personal knowledge of other female HonorHealth executives and officers routinely using profanity or foul language as part of normal conversation or to berate staff during public meetings without repercussions. Examples of such similarly situated female executives shown preferential treatment include Carol Henderson and Carolyn Beyerle.

26. At a July 29, 2015 meeting, Mr. Marshall was informed that his employment was going to be terminated. The rationale for the discharge shifted over time. Among the rationale offered for his termination was the claim that other company executives had expressed frustration with a large number of open job postings. Mr. Marshall pointed out that job recruitment was the sole responsibility of female executive Judie Goe, the Assistant VP of Recruiting, who was not similarly investigated or discharged.

27. After his termination, the duties of Mr. Marshall were taken over by Ms. Goe and she was given the position of Interim VP of HR. The preferential treatment of Ms. Goe, and attempt to blame Mr. Marshall for her failure to fill open positions, are examples of gender discrimination and retaliation in violation of Title VII.

28. During the termination meeting of July 29, 2015, Mr. Marshall was offered a severance package that included one year of compensation. The severance package included a discriminatory offset provision that would immediately cut off further severance compensation payments if Mr. Marshall secured other employment at any time during the next year. This offset provision violated the provisions of the written offer letter that promised Mr. Marshall a full year of severance compensation without any offset provisions or other conditions.

29. Mr. Marshall was involved in processing and reviewing the terms and conditions of numerous severance packages given to HonorHealth executives and members of upper management during his employment. Mr. Marshall has personal knowledge that the offset provision contained in his severance package was not normally included in HonorHealth severance packages for other similarly situated employees.

30. A similar offset provision was not included in the severance compensation packages of other similarly situated female counterparts. Examples of such females shown preferential treatment include, among others, Vickki Noyes, Jean Knoedler and Jessica Rivas. On information and belief, Ms. Noyes and Ms. Knoedler left HonorHealth after investigations or under circumstances that would normally preclude receiving severance packages.

31. A similar offset provision was not included in the severance compensation packages of other significantly younger similarly situated counterparts. Examples of such significantly younger individuals include the aforementioned Jessica Rivas, who is believed to be in her early 30's at the time she left HonorHealth, and Brian Smit, a male under the age of 40 when he left HonorHealth. Mr. Smits is known to have taken a position with Banner Health immediately after leaving HonorHealth.

32. During the termination meeting, Mr. Marshall pointed out that the offset provision was not included in other severance packages.

33. As was his right as an older employee, Mr. Marshall reviewed the severance package with counsel. Mr. Marshall informed HonorHealth, through counsel, that he did not accept the inclusion of the offset provision in a letter dated August 19, 2015 and asked that it be removed. Mr. Marshall also engaged in protected activity, asserting how he felt his termination may have violated certain federal and state discrimination laws.

34. HonorHealth responded the next day in a letter dated August 20, 2015 and summarily withdrew the severance package. In a threatening warning, the letter stated that Mr. Marshall "should seriously consider whether litigation, will promote his future employability. Mr. Marshall should not underestimate the resolve of HonorHealth to defend his claim with the full resources of the institution." Mr. Marshall construed this statement as a promise of future retaliation against Mr. Marshall if he pursued his claim.

35. As a senior member of HonorHealth HR, Mr. Marshall knew that other similarly situated significantly younger individuals and female executives of HonorHealth did not receive similar offset provisions in their severance packages. In addition, Mr. Marshall knew that other similarly situated significantly younger individuals and female executives had discussed and negotiated potential severance packages without those packages being immediately withdrawn by HonorHealth.

36. The decision to include the offset provision in the severance package, and then withdraw the package entirely after Mr. Marshall questioned the legality of his

discharge and inclusion of the offset provision, constituted acts of illegal gender discrimination and retaliation in violation of Title VII.

37. In September 2015, Mr. Marshall filed the first of three charges of discrimination with the EEOC (Charge No. 540-2015-03378) alleging he was discriminated against because of his sex, male, in violation of Title VII of the Civil Rights Act of 1964, due to his age in violation of the Age Discrimination in Employment Act, and due to his disability in violation of the Americans with Disabilities Act. Mr. Marshall also alleged he was subjected to illegal retaliation under each of the three discrimination statutes.

38. The act of filing this charge of discrimination with the EEOC was a further protected activity on the part of Mr. Marshall.

39. On October 15, 2015, Mr. Marshall made a claim for the one year of severance benefits outlined in his job offer letter.

40. In a letter dated January 13, 2016, severance benefit plan administrator and HonorHealth employee, Lois Uniat, denied Mr. Marshall's request for severance benefits. This denial letter claimed that Mr. Marshall was terminated for cause.

41. On March 11, 2016, Mr. Marshall filled a comprehensive and detailed appeal of the denial of severance benefits. This appeal pointed out weaknesses and inconsistencies in HonorHealth's position, extensive problems and issues associated with the denial, numerous violations of HonorHealth benefit and other policies, acts of retaliation and the shifting, pretextual and discriminatory nature of the reasons put forth by HonorHealth for his termination and denial of severance benefits.

42. In a letter dated July 7, 2016, Ms. Uniat informed Mr. Marshall that she had reversed her previous denial of his claim for severance benefits because it was not clear Mr. Marshall was terminated for cause as previously claimed.

43. The actions of HonorHealth, its counsel and employees in denying the original severance benefit request of Mr. Marshall constitute retaliation, discriminatory animus and pretext.

44. After his termination from HonorHealth, Mr. Marshall obtained employment as Human Resource's Director for Barrow Neurosurgical Associates Ltd (Barrow), a major medical group that operates multiple treatment centers in the Phoenix, Arizona metropolitan area within Maricopa County, Arizona.

45. Due to an unplanned resignation by the Barrow CEO, Mr. Marshall was appointed interim CEO of Barrow.

46. In this capacity, Mr. Marshall became involved in negotiations of a potential business agreement between Barrow and HonorHealth. The following week, counsel for HonorHealth called outside counsel for Barrow and attempted to have Mr. Marshall removed from the negotiations.

47. During the telephone call, HonorHealth's counsel stated that Mr. Marshall had an EEOC charge of discrimination pending against HonorHealth.

48. HonorHealth counsel went on to claim that Mr. Marshall also had pending litigation against HonorHealth. This statement was knowingly false.

49. The actions and statements of HonorHealth counsel, on behalf of HonorHealth, were knowingly designed to negatively impact the employment relationship of Mr. Marshall with Barrow and constituted retaliation for the previously outlined acts of protected activity performed by Mr. Marshal. HonorHealth's counsel was experienced in employment related matters and knew that his actions and statements to Barrow were improper and illegal under federal employment and discrimination statutes.

50. Influenced by the statements and actions of HonorHealth, on or about January 13, 2017, Barrow terminated the employment of Mr. Marshall.

51. Mr. Marshall filed a second charge of discrimination with the EEOC (Charge No. 540-2017-01011) on March 21, 2017. This second charge alleged that Mr. Marshall was the victim of retaliation in violation of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act and the Americans with Disabilities Act.

52. The act of filing this second charge of discrimination with the EEOC was another protected activity on the part of Mr. Marshall.

53. HonorHealth subsequently posted an opening for the position of Vice President for Human Resources and Total Rewards. Sometime in May 2018, Mr. Marshall applied for the position and received electronic confirmation that his application had been received.

54. Another individual was hired for the position of VP for HR and Total Rewards on or around July 2018.

55. Given his experience, Mr. Marshall reasonably should have been considered for the position.

56. Mr. Marshall was never considered for the position of VP for HR and Total Rewards.

57. The failure to consider Mr. Marshall for the open position constitutes retaliation for the previously outlined acts of protected activity by Mr. Marshall.

58. Mr. Marshall filed a third charge of discrimination with the EEOC (Charge No. 540-2019-01062) alleging he was retaliated against and not considered for the open positions due to filing two earlier charges of discrimination in violation of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act and the Americans with Disabilities Act.

59. Having received right to sue letters from the EEOC, Mr. Marshall has complied with all necessary legal and other requirements in order to pursue the statutory claims contained in this lawsuit.

**Count I**
**Violation of Title VII (Gender Discrimination)**

60. All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

61. Title VII prohibits discrimination in employment based on sex, gender, race, national origin and other factors.

62. As described herein, HonorHealth discriminated against James Marshall, a male, based on his gender in violation of 42 U.S.C. § 2000e-2(a) by engaging in, tolerating, or failing to prevent gender discrimination, including termination of his employment and his payout of benefits.

63. The effect of this unlawful gender discrimination has been to classify, limit, and discriminate against James Marshall in a way that deprived him of past, current and future employment opportunities due to his gender in violation of Title VII of the Civil Rights Act of 1964, as amended.

64. As a victim of the unlawful employment practices described herein, Mr. Marshall has been damaged, suffered humiliation and degradation, and been deprived of monetary and non-monetary benefits in violation of Title VII.

65. James Marshall is entitled to recover all relief as authorized under Title VII including his economic losses in an amount to be proved at trial.

66. The intentional nature of the gender discrimination suffered by Mr. Marshall entitles him to collect punitive damages.

67. James Marshall is also entitled to recover his reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

**Count II**
**Violation of Title VII (Retaliation)**

68. All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

69. Title VII also prohibits retaliation for engaging in protected activities related to enforcement of the provisions of Title VII.

70. HonorHealth retaliated against James Marshall for engaging in acts of protected activity in violation of Title VII. Mr. Marshall also engaged in protected activities related to his personal filing of charges of discrimination with the EEOC.

71. The effect of this unlawful retaliation has been to classify, limit, and discriminate against James Marshall in a way that deprived him of past, current and future

employment opportunities due to his gender in violation of Title VII of the Civil Rights Act of 1964, as amended.

72. As a victim of the unlawful employment practices described herein, Mr. Marshall has been damaged, suffered humiliation and degradation, and been deprived of monetary and non-monetary benefits in violation of Title VII.

73. James Marshall is entitled to recover all relief as authorized under Title VII including his economic losses in an amount to be proved at trial

74. The intentional nature of the retaliation suffered by Mr. Marshall entitles him to collect punitive damages.

75. James Marshall is also entitled to recover his reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

## Count III
## Violation of the ADEA (Discrimination)

76. All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

77. The ADEA prohibits discrimination in employment based on an employee's age.

78. As a victim of the unlawful employment practices described herein, Mr. Marshall has been damaged and been deprived of monetary and non-monetary benefits in violation of the ADEA.

79. James Marshall is entitled to recover all relief as authorized under the ADEA including his economic losses in an amount to be proved at trial and liquidated damages.

80. Under the ADEA, James Marshall is also entitled to recover his costs and reasonable attorneys' fees.

### Count IV
### Violation of the ADEA (Retaliation)

81. All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

82. The ADEA prohibits retaliation for engaging in protected activity related to enforcement of the terms and provisions of the ADEA.

83. Mr. Marshall engaged in acts of protected activity related to his personal filing of charges of discrimination with the EEOC.

84. As a victim of the unlawful employment practices described herein, Mr. Marshall has been damaged and been deprived of monetary and non-monetary benefits in violation of the ADEA.

85. James Marshall is entitled to recover all relief as authorized under the ADEA including his economic losses in an amount to be proved at trial and liquidated damages.

86. Under the ADEA, James Marshall is also entitled to recover his costs and reasonable attorneys' fees.

### Count V
### Violation of the ADA (Retaliation)

87. All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

88. The ADA prohibits retaliation for engaging in protected activities related to enforcement of the provisions of the ADA.

89. As described herein, HonorHealth retaliated against James Marshall for engaging in acts of protected activity in violation of the ADA. These acts included, but are not limited to, reporting deficiencies in the HonorHealth disability leave policy and by filing charges of discrimination with the EEOC.

90. The effect of this unlawful retaliation has been to classify, limit, and discriminate against James Marshall in a way that deprived him of employment opportunities in violation of the ADA.

91. As a victim of the unlawful employment practices described herein, Mr. Marshall has been damaged and been deprived of monetary and non-monetary benefits in violation of the ADA.

92. James Marshall is entitled to recover all relief as authorized under the ADA including his economic losses in an amount to be proved at trial.

93. Under the ADA, Mr. Marshall is also entitled to recover his reasonable attorneys' fees and costs.

**WHEREFORE**, Plaintiff James Marshall respectfully requests the Court's action and judgment against Defendant HonorHealth as follows:

A. Declare that the actions and practices complained of in this Complaint are unlawful and violate federal law including Title VII, the ADEA, the ADA;

B. Order that James Marshall be awarded all economic and other financial losses in amounts to be proven at trial;

C. Order that James Marshall be awarded all other available relief, including but not limited to general and special damages, liquidated damages, compensatory damages for emotional distress, harm to reputation, loss of earnings capacity, diminished employment prospects, and for all other available relief, in amounts to be proven at trial;

D. Award James Marshall punitive damages sufficient to punish Defendant for its wrongful actions and to deter such conduct in the future;

E. Award James Marshall his reasonable attorneys' fees and costs as provided for under federal statute, or other provision;

F. Award James Marshall prejudgment interest from the date each claim for damages was liquidated;

G. Award James Marshall interest on all sums awarded in judgment at the highest legal rate allowable from the date of judgment until paid;

H. Retain jurisdiction over this action to ensure full compliance with the Court's orders and require Defendant to file such reports as the Court deems necessary to evaluate such compliance; and

I. For such other and further relief as this Court deems proper and just under the circumstances.

**DATED** this 22nd day of April, 2021.

**JACKSON WHITE**

s/ Michael R. Pruitt
By:   Michael R. Pruitt, SBN 011792
        Nathaniel J. Hill, No. 028151
40 North Center Street, Suite 200
Mesa, Arizona   85201
*Attorneys for Plaintiff*

By:   s/ Gregory Fairbanks

F:\MNO\Marshall, Jim\Pleadings\Complaint.Marshall.docx